Argued and submitted May 3, 1989, the orders of the Lane County Government Boundry Commission affirmed and the decision of the Court of Appeals affirmed July 17, 1990

Edward S. DONALDSON,
Elizabeth R. Donaldson and Herbert D. Jacobsen,
*Petitioners on Review,*

*v.*

LANE COUNTY LOCAL
GOVERNMENT BOUNDARY COMMISSION,
*Respondent on Review,*

*and*

CITY OF EUGENE,
*Intervenor/Respondent on Review.*

(LGBC 863, 864, 865; CA A44848 (Control) A44849, A44850)
(LGBC 871; CA A45837)
(LGBC 873, 874, 875; CA A46545 (Control), A46546, A46547)
(Cases Consolidated)
(SC S35703)

795 P2d 549

George E. Birnie, Portland, argued the cause and filed the petition for petitioners on review.

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause and filed the response for respondent on review. With him on the response were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Timothy J. Sercombe, Eugene, argued the cause and filed the responses for the intervenor/respondent on review. With him on the response was Harrang, Long, Watkinson & Arnold, P.C., Eugene.

Gregory W. Bryne, Portland, argued the cause and filed a brief on behalf of *amicus curiae* Mid-County Future Alternatives Committee.

Matthew R. Baines, Assistant City Attorney, Gresham, and Jeffrey L. Rogers, City Attorney, Portland, filed a brief on behalf of *amici curiae* City of Gresham and City of Portland.

Before Peterson, Chief Justice, and Linde,** Carson, Jones,*** Gillette, Van Hoomissen, and Fadeley, Justices.

GILLETTE, J.

** Linde, J., retired January 31, 1990.

*** Jones, J., resigned April 30, 1990.

## GILLETTE, J.

This is a case of judicial review of seven orders of the Lane County Local Government Boundary Commission (the Boundary Commission) annexing seven different parcels in the unincorporated Lane County community of Santa Clara to the City of Eugene (Eugene). Petitioners, who are individual residents of Santa Clara, seek review in this court, claiming that: (1) the annexations were unlawful because Santa Clara was a "proposed city," and territory in a "proposed city" cannot be annexed to another city; (2) four of the annexations were legislatively validated by a statute, ORS 199.534, that violates constitutional restrictions on the power of the legislature to amend a city charter; and (3) the Boundary Commission had no authority to approve annexations to Eugene because the legislature that granted the Commission its authority had no constitutional annexation authority available to delegate to the Boundary Commission. The Court of Appeals upheld the annexations. *Donaldson v. Lane County Local Govt. Bdry. Comm.,* 93 Or App 280, 286, 761 P2d 1349 (1988). We affirm the decision of the Court of Appeals.

## FACTS

On April 18, 1984, a prospective petition for the incorporation of the City of Santa Clara was filed with the Lane County Clerk. At the time of the filing, the petition complied with the statutory requirements for such a petition.[1]

---

[1] At the time of the filing, ORS 221.031 provided:

"(1) Before circulating a petition to incorporate unincorporated territory as a city, the petitioners shall file with the county clerk of the county in which the proposed city lies or, should it lie in more than one county, to the county clerk of the county in which the largest part of its territory lies, a petition for incorporation in a form prescribed by rule of the Secretary of State. The county clerk shall immediately date and time stamp the prospective petition and shall authorize the circulation of the petition. The county clerk shall retain the prospective petition and shall immediately send two copies of the prospective petition to the appropriate county court.

"(2) A petition for incorporation filed with the county clerk under subsection (1) of this section shall designate the name and residence address of not more than three persons as chief petitioners, who shall be electors registered within the boundaries of the proposed city. The petition shall contain the name of the proposed city. The petition shall also include a declaration of the rate of taxation, express in dollars per thousand dollars of assessed value, estimated to be sufficient to support an adequate level of municipal services. There shall be attached to the cover sheet of the petition a map indicating the boundaries of the proposed city. The map shall not exceed 14 inches by 17 inches in size and shall be used in lieu of a metes and bounds or legal description of the proposed city."

That section has subsequently been amended in respects not pertinent to our decision in this case.

The record does not indicate that the petition was ever signed by a sufficient number of electors or filed with the county court as required by ORS 221.040.[2] Subsequently, the owners of seven separate tracts of land sought to have their property annexed by Eugene.[3] Generally, the property owners sought annexation to obtain access to sewers and, in the cases of the undeveloped properties, to permit their development.

At each of the annexation hearings before the Boundary Commission, at least one petitioner appeared and testified about the April 14, 1984, filing of a prospective petition for incorporation, warning that the petition for the incorporation of Santa Clara included those lands whose annexation was under consideration at the hearing. The petitioners also testified that some signature collection activities had been undertaken.

The executive director of the commission testified that there was no petition for the incorporation of Santa Clara pending before the Boundary Commission. The Commission determined that "Santa Clara" presented no statutory obstacle to annexation, and approved the annexations.[4] Petitioners

---

[2] In 1984, ORS 221.040(1) provided:

"When a petition for incorporation described in ORS 221.031 is signed by 20 percent or, in a county with a population over 300,000, by 10 percent, of the electors registered in the area proposed to be incorporated, the petition shall be filed with the county court of the county in which the proposed petition was filed under ORS 221.031. Upon the filing of the petition, the county court shall fix the time and place for the hearing of such petition and shall give notice thereof by publication once each week for two successive weeks in a newspaper published in the county were the petition is filed and of general circulation within the boundaries, and by posting the notice for the same period of time in three public places in the area proposed to be incorporated. The notice shall state the time and place of the hearing, describe the boundaries set forth in the petition and state the purpose of the petition. If any portion of the proposed incorporation of a city lies within another county or counties, then the notice shall be published in a newspaper of general circulation in each of the counties and in the same time and manner."

The subsection subsequently was amended in respects not determinative of this proceeding.

[3] Three of the tracts, agency numbers 863, 864 and 865, are unpopulated tracts of 23.44, 14.88 and 9.13 acres of land. One tract, agency number 871, involves a 1.11 acre tract which contains seven duplexes and one single family dwelling. The remaining three tracts, agency numbers 873, 874 and 875, are residentially developed tracts of 0.76, 0.7 and 0.24 acres.

[4] The orders for agency numbers 863, 864 and 865 were adopted April 2, 1987, and became effective on May 18, 1987. The order for agency number 871 was adopted on June 4, 1987, and became effective on July 19, 1987. The orders for agency numbers 873, 874 and 875 were adopted on August 6, 1987, and became effective on September 20, 1987.

sought judicial review of these orders in the Court of Appeals pursuant to ORS 199.461(4).[5]

## LEGISLATIVE POWER TO ANNEX

In *Mid-County Future Alternatives v. City of Portland,* 310 Or 152, 795 P2d 541 (1990), we determined that the legislature had the constitutional authority to validate annexations to municipalities whose charters permitted such annexations. We further determine that Oregon Laws 1987, Chapter 818, section 3,[6] was a valid exercise of this legislative power. As the Eugene charter permits boundary changes "in accordance with state law,"[7] the rule of *Mid-County* effectively disposes of the arguments concerning the parcels bearing agency numbers 863, 864, 865, and 871, because the final Boundary Commission orders for all four of those annexations were adopted within the time period covered by Oregon Laws 1987, Chapter 818, section 3. Thus, the validity and constitu-

---

[5] ORS 199.461(4) provides:

"On the basis of the study and on the basis of the facts presented at the hearing, the boundary commission shall approve the proposed boundary change or application under ORS 199.464 as presented or as modified by the commission or disapprove the proposed change, by an order stating the reasons for the decision of the commission. Jurisdiction for judicial review of such an order is conferred upon the Court of Appeals. Except as provided in ORS 183.315(1), any person interested in a boundary change may petition for judicial review of the order under ORS 183.482."

This subsection remains unchanged.

[6] Oregon Laws 1987, Chapter 818, section 3, provides:

"Notwithstanding any other provision of this chapter or ORS chapter 222, territory annexed or transferred to a city or district by a minor boundary change approved by a boundary commission's final order adopted after January 1, 1985, but before the effective date of this 1987 Act shall be in the annexing city or district by operation of this 1987 Act commencing upon the effective date of the boundary commission's final order. The creation by this 1987 Act of annexations shall not void or impair any prior or subsequent minor boundary changes inside or outside of the affected territory."

[7] Chapter I, section 3, of the City of Eugene Charter provides:

"*BOUNDARIES.* The city includes all territory encompassed by its boundaries as they exist when this revision of the charter is adopted or as they are subsequently modified in accordance with state law. The repository of city records shall include at least two copies of this charter each containing an accurate, up-to-date description of the boundaries. The copies and description shall be available for public inspection during regular office hours."

Naturally, an annexation decreed by a properly enacted statute is "in accordance with state law."

tionality of the underlying Boundary Commission orders in those four cases are no longer relevant.

■ Our opinion in *Mid-County* also disposes of petitioner's contention that the legislature did not have the constitutional authority to create a boundary commission with the authority to conduct annexations. If the legislature has the authority to directly make available territory to be annexed to Eugene, but no constitutional provision limits that power to the legislature acting in its legislative capacity, the legislature has the authority to create a state agency such as the Boundary Commission to carry out that function.

## WHETHER SANTA CLARA IS A "PROPOSED CITY"

■ The only issue that remains is petitioners' contention that these annexations did not comply with the mandatory statutory limitations concerning annexation of land from one city to another. We reject this argument.

ORS 199.462(2)(b) limits the authority of a Boundary Commission to authorize annexation of territory: "Territory within a city may not be included within or annexed to another city." Former ORS 199.415 provided a definition of city:

"As used in ORS 199.415 to 199.519, unless the context requires otherwise:

"* * * * *

"(6) 'City' includes proposed city."[8]

Petitioners argue that these annexations are invalid because they cover territory included within the "proposed city" of Santa Clara. According to petitioners a "proposed city" comes into existence immediately upon filing of a prospective petition for incorporation with the county clerk. The Court of Appeals rejected this argument, as do we.

The statute provides no deadline for the completion of the signature collecting process, once a prospective petition for organization of a city has been filed. Thus, if petitioners' position were correct, the filing of a prospective incorporation

---

[8] The 1989 Legislature deleted this definition of city. Thus, in the future, a city does not include a proposed city. Or Laws 1989, ch 92, § 10.

petition would ban annexation for as long as the incorporation petition was in the signature-gathering process — perhaps forever. We see no need to adopt such an irrational interpretation of the statutes when the incorporation process contains a number of additional steps, each of which could be a logical point for a "proposed city" to come into existence. As the legislature has eliminated proposed cities from the statutory scheme, we need not determine exactly when that point is reached.[9] We need only hold that at the time these seven tracts of land were annexed by Eugene there was no proposed city of Santa Clara, but only a proposal to propose the city. Thus, these annexation were performed "in accordance with state law" and were valid under the charter of the City of Eugene.

## CONCLUSION

The ultimate power to authorize the procedure to be used for the annexation of territory by a municipal corporation belongs to the legislature. The legislatively mandated procedures were properly followed and did not conflict with the charter of the City of Eugene in this case. These seven annexations are valid.

The orders of the Lane County Local Government Boundary Commission are affirmed. The decision of the Court of Appeals is affirmed.

---

[9] The Court of Appeals concluded "that an area becomes a 'proposed city' only when those seeking incorporation have filed with the county court a petition containing the proper number of verified signatures and the other materials necessary to trigger the county court's responsibility to file the petition with the commission." *Donaldson v. Lane County Local Govt. Bdry. Comm.*, 93 Or App 280, 286, 761 P2d 1349 (1988).